### EASTERN TRANSP. CO. v. SOUTHERN TRANSP. CO. et al.

No. 6982.

District Court, E. D. Virginia, Norfolk Division.

Sept. 18, 1946.

R. Arthur Jett, of Norfolk, Va., for libellant.

C. Dodson Morrisette and Hughes, Little & Seawell, all of Norfolk, Va., for respondents.

HUTCHESON, District Judge.

Gentlemen, I have followed the testimony as closely as I could and the case has been fully and ably discussed by counsel, and I am in as good position to dispose of it at this time as I would be if I were to review the evidence after it was transcribed. I do not think it is necessary for me to review the evidence in reaching a decision. There are a few matters in connection with it which I shall touch upon briefly.

In the first place, it has been pointed out that the libellant is charged with a heavy burden under the circumstances of the case. There are several particulars in which evidence is lacking. There are a number of witnesses who ordinarily should be present, and ordinarily they probably would be. I think it would be quite helpful if I knew what the officials of the canal did and what caused the action on their part in more particularity than I have before me now.

There were ship-to-shore messages about the barges, but the substance of those messages pertaining to the location of the barges is not in evidence. They may have been on the southern anchorage, or the southern side of the channel, or they may have been elsewhere. I think that would be quite enlightening. It seems that the following day they were moved from a point near the southern entrance. The conversations to which I refer may have been caused by the location of the barges where they were when they were moved the following day. I believe it was the 27th they were moved, the second day.

Another thing: the deck hands, or the crew, and the master of the Tennessee are not here. I think their testimony would be helpful, but we are confronted with the lapse of time with respect to those witnesses.

It is my impression of the testimony of the witnesses for the libellant, that as they entered the channel there was some confusion concerning the lights. I recall that one or more of them testified, giving as his reason for failure to see the lights on the barges earlier, the fact that there were a large number of lights at the entrance to the canal, at the bridge some distance beyond the entrance, and on the shoreline both to the north and the south of the entrance. They testified there were also other vessels at anchor on the anchorage. It would seem that the operators of the tug Walker might have observed those lights earlier.

There is a question in my mind about the sufficiency of the lookout. It seems to me that lights should have been visible from a point coming down the Delaware River before making the turn into the channel leading to the canal, but the tug A. L. Walker did not sight the lights until a very short distance from them, or if it sighted lights they were not identified.

All in all, I am left with doubt in my mind as to what actually was the location of the barges. There is a difference—not very material, but a difference—between the witnesses for the libellant as to where these barges were located, whether on the northern side of the channel or to the southern side.

As I have said, it also strikes me that the operators of the tug should have seen these lights and identified them earlier. But, from their testimony, the lights on the shore were quite confusing. I cannot say but what the theory suggested by Mr. Seawell, without evidence to support it, is true; that the barges were anchored near the southern entrance to the canal all the time and this flotilla came around the barges at or about a place near where they were moved from on the 27th and where they were shown to have been on the 26th.

Another thing that I think is of interest is the failure of the tug Walker to identify these barges the next day, and in that connection I am struck with this: The testimony of the libellant is that around one o'clock on the night of the 25th or the morning of the 26th, these barges were in the channel near the northern edge, or according to one witness, toward the southern edge. It is in evidence that they were

anchored near the southern entrance to the channel on the 25th. The witnesses for the libellant, however, place them near the northern edge of the channel and some distance away from the point of anchorage. There had been a flood tide in the meantime. It is the theory of the libellant, as I take it, that during the flood tide these barges drifted, or dragged anchor and drifted to the northward. This occurrence was at ebb tide or near the height of ebb tide, around one o'clock, and still, according to the testimony of the libellant, the following morning at nine o'clock, after this heavy ebb tide, the barges were in relatively the same position they were at one o'clock. So, if they were dragging anchor around the anchorage there, I do not see why they should have stayed in the same place, or practically the same place, for about eight hours with a strong ebb tide.

Another consideration that impresses me is that there was a strong ebb tide flowing to the south, but still the tug was unable, with the tide against the barges being towed, to head those barges into the canal, and that this flow of the tide around the north jetty was sufficient to carry the barges into the jetty, despite the fact that, according to the testimony, the tug was headed southward and straining at the head barge all the time. It was testified by at least one of the witnesses who were experienced in such matters that he had had barges go ashore at this point at other times.

Without further discussion of the evidence, which I might prolong considerably, it is my opinion that the libellant has not met the required burden of proof and the libel will be dismissed.

### Findings of Fact.

1. That the Eastern Transportation Company is a corporation organized under the laws of the State of Delaware, with its principal office in the City of Baltimore, Maryland, and engaged in the operation of tugs and barges in the Chesapeake Bay and on the Coast, and was the owner and operator of the tug A. L. Walker and barges Luther E. Hooper and Hallowell.

2. That the Southern Transportation Company is also a corporation organized under the laws of the State of Delaware, and at the time of the matters hereinafter set forth had its principal office in the City of Philadelphia, Pennsylvania, and was also engaged in the operation of tugs and barges in the Chesapeake Bay and on the Coast, and was the owner and operator of the barges Absecon and Tennessee.

3. That the P. Dougherty Company is a corporation organized under the laws of the State of Maryland, with its principal office in the City of Baltimore, and likewise engaged in the operation of tugs and barges in the Chesapeake Bay and on the Coast, and was the owner and operator of the tug Dunmore.

4. That on the night of June 25, 1942, libellant's steam tug A. L. Walker took in tow the barges Luther E. Hooper and Hallowell, both light, at Chester, Pennsylvania, bound for Norfolk, Virginia, and arrived in the Delaware River in the vicinity of the entrance to the Chesapeake and Delaware Canal on the early morning of June 26, 1942. Between the tug Walker and the barge Luther E. Hooper there was a hawser approximately 30 fathoms in length, and between the barge Hooper and the barge Hallowell a hawser approximately 25 fathoms in length. During the trip the weather was clear, with very little wind. Upon arrival at a point in the Delaware River, near the entrance to the canal, a strong ebb tide was running.

5. That the Southern Transportation Company's two barges Absecon and Tennessee, were bound north, loaded with coal, from Hampton Roads, leaving Hampton Roads on June 22, 1942, and destined to New Haven, Connecticut. For the purpose of towing these barges the tug Dunmore of the P. Dougherty Company was engaged. The said barge Absecon was taken by the tug Dunmore through the Chesapeake and Delaware Canal and was anchored on the Reedy Point Anchorage on June 25, 1942, about Noon. The barge Tennessee was thereafter taken through the canal by the tug Dunmore and made fast alongside the barge Absecon at about 5:00 P.M., on June 25, 1942. This is an

established anchorage and was to the West of the channel of the Delaware River and to the South of the entrance to the canal.

6. While proceeding from the Delaware River toward the entrance to the canal on the early morning of June 26, 1942, the tug A. L. Walker and its tow passed around the barges Absecon and Tennessee, but whether the said barges were in the channel or fairway leading from the Delaware River to the canal, as alleged by the libellant, is undetermined.

7. The tide runs very strong in this locality and there had been a flood tide in the interval between the time the Southern Transportation Company's barges Absecon and Tennessee had been anchored on the Reedy Point Anchorage and the time the tug Walker and its tow passed around the said barges on the early morning of June 26, 1942.

8. The barges Absecon and Tennessee carried their regulation anchor lights.

9. The lights of the Absecon and Tennessee were either not sighted or were not identified as such by the tug A. L. Walker until the tug was within a very short distance therefrom.

10. That after passing the said barges, the barge Hooper sheered to starboard and grounded a short distance beyond Buoy #6.

11. The barge Hallowell likewise sheered to starboard and continued on until the bluff of her starboard bow struck with considerable force the stone jetty at the entrance to the canal.

12. That especially on the ebb tide a difficulty is experienced in handling barges at this entrance to the canal.

13. That the barges Hallowell and Hooper remained at this point of grounding until about 9:00 o'clock the following morning, when they were again taken in tow by the tug Walker and carried through the canal.

14. That neither the master nor anyone from the tug A. L. Walker or from either of the barges in its tow made any attempt after the collision and prior to leaving the scene thereof to confirm their previous identification of the barges Absecon and Tennessee.

15. That there is no evidence that the tug Dunmore placed these barges at any improper anchorage.

16. That although the grounding and damage are alleged to have occurred on the early morning of June 26, 1942, no notice of survey was given to respondents, and no claim made until February, 1944, and the libel in this case was not filed until August 28, 1944.

## Conclusions of Law.

1. That the libellant has not met the required burden of proof.

2. That the libel should be dismissed with costs to the respondents.

3. That the navigators of the tug Walker might have observed the anchor lights of the barges Absecon and Tennessee earlier than they did.